IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, | Criminal No. 3:09-826-04-CMC |
| vs. | **OPINION AND ORDER** |
| Marko Deangelo Marshal,<br>    Defendant. | |

This case comes before the court on Defendant's *pro se* Motion for Relief Under First Step Act of 2018. ECF No. 1555. The Government filed a Response in Opposition. ECF No. 1561. The United States Probation Office filed a Sentence Reduction Report indicating Defendant does not qualify for relief under the Act. ECF No. 1560.

The court has reviewed the above filings as well as the Superseding Indictment (ECF No. 366), Defendant's Plea Agreement (ECF No. 564), Transcript of Rule 11 hearing (ECF No. 1562), and PreSentence Report ("PSR") (ECF No. 1560-1), and concludes that Defendant is not eligible for relief under the First Step Act.

## BACKGROUND

It was charged in Count 1 of the Superseding Indictment that Defendant:

> knowingly and intentionally did combine, conspire, agree and have tacit understanding with each other and with others, both known and unknown to the grand jury, to knowingly, intentionally, and unlawfully possess with intent to distribute and to distribute cocaine and cocaine base (commonly known as "crack" cocaine), both Schedule II controlled substances, said conspiracy involving 5 kilograms or more of cocaine, and 50 grams or more of "crack" cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A); All in violation of Title 21, United States Code, Section 846.

ECF No. 366 at 2.

Defendant thereafter entered into a Plea Agreement that provided for a plea to Count 1:

The Defendant agrees to plead guilty to Count 1 of the Superseding Indictment now pending, which charges conspiracy to distribute 5 kilograms or more of cocaine and 50 grams or more of "crack" cocaine, a violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).

In order to sustain its burden of proof as to this offense, the Government is required to prove the following:

A. The conspiracy was knowingly and willfully formed and was in existence on or about the dates set forth in the Superseding Indictment;
B. The defendant joined the conspiracy with knowledge of the conspiracy's unlawful purpose; and
C. The defendant distributed 50 grams of "crack" cocaine and 5 kilograms or more of cocaine, agreed to the distribution of same or the distribution of same was reasonably foreseeable to and within the scope of the defendant's agreement.

Possible Penalties for 21 U.S.C. §§ 846 and 841(b)(1)(b)

A mandatory minimum term of 20 years, a maximum of life, a maximum fine of $8,000,000, a ten year term of supervised release and a $100.00 special assessment.[1]

ECF No. 564 at 1-2.

At the Rule 11 hearing, the court advised Defendant:

In the case of Mr. Marshal, you're proposing to plead guilty to count one of the superseding indictment, this is conspiracy to distribute 5 kilos or more of cocaine and 50 grams or more of crack. The government would have to be able to prove that you – this conspiracy as set forth in the superseding indictment, which is alleged to have begun in or around 2006, that in fact it was knowingly and willfully formed and in existence on or about these dates, that at some point in time you intentionally joined in the conspiracy with knowledge of its unlawful purpose, and that during the time you were involved in the conspiracy you either personally distributed in excess of five kilos of cocaine and 50 grams or more of crack or agreed with others to do that or it was reasonably foreseeable to you and within the

---

[1] Defendant's mandatory minimum was enhanced based on a prior felony drug conviction. 21 U.S.C. § 851; ECF No. 480.

2

scope of your agreement that others in the conspiracy would do that. . . Is that your understanding of your charge, the requirements of proof and the penalty?
The Defendant: Yes.

ECF No. 1562 at 43-44.

The Government, through FBI Special Agent Michael Stansbury, summarized the evidence against Defendant, explaining Defendant

> came to our attention back on January 26th, 2005 when an undercover – an informant of ours of the FBI made a controlled purchase of a quantity of crack from Mr. Marshal. Since that time the FBI obtained numerous or contained information regarding Mr. Marshal and his drug trafficking activities with Mr. Bennett through several historical witnesses who have pled guilty in the District of South Carolina for drug charges; that information supporting that Mr. Marshal was selling cocaine and crack cocaine.
> On February the 12th, 2008, the FBI made a controlled purchase of crack cocaine from Mr. Bennett at the Colony Apartments. When that controlled purchase was made, Mr. Marshal again was with Mr. Bennett. Although Mr. Bennett made the sale, it did corroborate the information we had from our other witnesses that they were associates or partners in the drug business.
> Then on August 29th, 2008 the FBI made another controlled purchase of crack cocaine from Mr. Bennett in the Colony Apartments. Then following that purchase went back to – was trying to get more. Mr. Bennett was gone, but Mr. Marshal was there and had a lengthy conversation with Mr. Marshal on video regarding the purchase of this crack cocaine where Mr. Marshal disclosed that they were waiting to get another big eight or 125 grams of cocaine and they were going to cook some up and would soon be able to sell more. Ultimately that deal did not go through, but the video was a basis for a lot of this evidence that supports the historical witnesses who say that Mr. Marshal was selling crack cocaine in excess of 50 grams.
> As far as the 5 kilograms, the evidence is that he was involved in dealing more than five kilograms with Mr. Bennett, meaning the – the cocaine that they were getting together and selling together was well in excess of five kilograms of cocaine.
> Court: Well, were they pretty much converting it all to crack?
> Mr. Stansbury: Mr. Marshal – they would each take their cocaine on their own. Mr. Marshal would convert most of his to crack and sell it. That was his main thing. Mr. Bennett had other people cook his into crack and he could sell crack, too. So crack was the main thing. They would receive kilogram quantities – not saying that Mr. Marshal himself would get a full kilogram, he would maybe get like 9 ounces

3

out of that, but they would get kilograms in, divide it up, and then cook theirs into crack and he would sell his into crack.

*Id.* at 63-65.

Thereafter the court inquired of Defendant as follows:

The court: Right. Okay. All right. Mr. Marshal, do you agree or disagree with what Mr. Stansbury says you did?
The Defendant: Yes.
The court: You agree?
The Defendant: Yes.
The court: Okay. Do you admit that you at some point joined in this drug conspiracy?
Defendant: Yes.
The court: And do you admit that during the time you were involved in it, you either personally distributed more than 5 kilos of cocaine and 50 grams or crack or assisted others in doing so?
The Defendant: On my behalf, yeah, I probably did distribute a lot of crack, but I don't think it was 5 kilos or more.
The court: Well, I'm not – I'm not talking about the crack on that part. I'm saying that it looks to me like what was happening what powder was coming in, powder was being converted to crack, and then the crack was being sold. And all I'm asking you right now is do you agree that you distributed 50 grams or more of crack?
The Defendant: Yes.
The court: Okay. Do you have any questions about any –
Mr. Moore: Your honor, I – just for the law and the long haul, I think he needs to admit that he either personally distributed or agreed to the distribution of 5 kilos is what –
The court: Of what –
Mr. Watkins: Your honor, he agrees that its reasonably foreseeable, which reaches the same place –
Mr. Moore – He needs to say that on the record.
The court: Of powder?
Mr. Moore: Of powder.
The court: Okay. As far as the powder, do you admit that you assisted or agreed to or it was reasonably foreseeable to you that others that you were involved with were distributing altogether more than 5 kilos of cocaine?
The Defendant: Yes.
. . .

4

> The court: All right. Then how do you wish to plead Count 1, not guilty or guilty?
> The Defendant: Guilty.

*Id.* at 65-67.

## ANALYSIS

Under the First Step Act, the court may impose a reduced sentence only if it previously imposed a sentence for a "covered offense" – *i.e.*, a "violation of a federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, . . . that was committed before August 3, 2010." Because sections 2 and 3 of the Fair Sentencing Act have no effect on the statutory penalty for Defendant's offense of conspiring to possess with intent to distribute both 5 kilograms or more of cocaine and 50 grams or more of cocaine base, a violation of 21 U.S.C. §§ 846, 841 (b)(1)(A), Count 1 is not a covered offense eligible for First Step Act relief. Section 2 of the Fair Sentencing Act amended the threshold cocaine base amounts triggering §§841(b)(1)(A) and (B)'s penalties, amending § 841(b)(1)(A)(iii) "by striking '50 grams' and inserting '280 grams,'" and amending § 841(b)(1)(B)(iii) "by striking '5 grams' and inserting '28 grams.''" Fair Sentencing Act, § 2, Pub. L. No. 111-220, 124 Stat. 2372. Section 3 of the Fair Sentencing Act eliminated the mandatory minimum sentence for simple possession. Fair Sentencing Act, § 3, Pub. L. No. 111-220, 124 Stat. 2372. Neither section altered the statutory penalties for offenses involving powder cocaine.

Both before and after the effective date of sections 2 and 3 of the Fair Sentencing Act, the statutory penalty for Defendant's offense of conviction in Count 1 is 20 years to Life imprisonment pursuant to 21 U.S.C. §§ 846, 841(b)(1)(A), and 851. Regardless of whether Defendant's cocaine

5

base amount still triggers his original statutory penalty range, five kilograms or more of powder cocaine does.[2] The statutory penalty for conspiracy to distribute five kilograms or more of cocaine given Defendant's prior felony drug conviction remains 20 years to Life imprisonment.

Congress, in enacting § 404 of the First Step Act in 2018, was concerned about a particular class of defendants – those whose statutory penalties for cocaine base would have been lower but for the fortuity they were sentenced before August 3, 2010, and therefore could not take advantage of the Fair Sentencing Act. *See Dorsey v. United States*, 567 U.S. 260, 264 (2012) (concluding the Fair Sentencing Act's more lenient penalty provisions apply to defendants sentenced after August 3, 2010, whether or not their crimes were committed before that date). Defendants sentenced today for the same offense Defendant committed face the same statutory penalty range Defendant faced. Granting Defendant a sentence unavailable to defendants charged and sentenced today would turn the First Step Act's goal on its head.

The court denies Defendant's motion. The record reflects Defendant agreed to plead guilty and did plead guilty to conspiracy to distribute five kilograms or more of cocaine <u>and</u> 50 grams or more of cocaine base. He admitted he distributed 50 grams or more of cocaine base during the conspiracy, and that he "assisted or agreed to or it was reasonably foreseeable to you that others that you were involved with were distributing altogether more than 5 kilos of cocaine." ECF No. 1562 at 66. His statutory penalty was not therefore controlled by his guilty plea to conspiracy

---

[2] The Fair Sentencing Act could have retroactively decriminalized cocaine base but even that would have had no effect on Defendant's statutory penalty.

involving 50 grams or more of cocaine base.  Because he also admitted guilt to conspiracy to distribute five kilograms or more of cocaine, his statutory penalty range was 20 years to Life, independent of the penalty applicable to conspiracy to distribute cocaine base.[3]

The intent of the First Step Act's cocaine base penalty changes was to provide Fair Sentencing Act relief to those whose statutory range was driven by cocaine base disparities before the passage of the Fair Sentencing Act.  Persons whose statutory ranges were not affected by such disparities are not eligible for relief.  That is what happened here.

---

[3] *United States v. Juan Mendoza*, __ F. App'x __, 2019 WL 4051965, at *1, (4th Cir. Aug. 28, 2019) (affirming district court's denial of First Step Act motion where defendant pled guilty to conspiracy to distribute 5 kilograms or more of cocaine, 50 grams or more of cocaine base, and a quantity of marijuana), *aff'g* 2019 WL 1593998 (D.S.C. Apr. 15, 2019); *United States v. Westbrook*, __ F. App'x __, 2019 WL 3991466, at *1 (4th Cir. Aug. 23, 2019) (affirming district court's denial of First Step Act motion where defendant pled guilty to conspiracy with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base), *aff'g* 2019 WL 1542571 (D.S.C. April 9, 2019); *United States v. Spencer*, Cr. No. 07-174, 2019 WL 3369794, at *2 (D. Minn. July 26, 2019) ("Because the statutory penalties for Spencer's powder cocaine offenses in Counts 1 and 4 were not modified by the Fair Sentencing Act, the offenses are not "covered offenses" under the First Step Act."); *United States v. Smith*, No. 8:02-cr-448, 2019 WL 2330482, at *1 (M.D. Fla. May 31, 2019); *United States v. Jones*, Cr. No. 94-0067, 2019 WL 1560879, at *2 S.D. Ala. April 9, 2019).  *But see United States v. Medina*, No. 3:05-cv-58, 2019 WL 3766392, at * 2 (D. Conn. Aug. 8, 2019); *United States v. Mack*, Crim. No. 00-323, 2019 WL 3297495, at *11-13 (D.N.J. July 23, 2019).

Accordingly, for reasons set forth above, Defendant's Motion for Relief Under First Step Act (ECF No. 1555) is denied.

**IT IS SO ORDERED**.

                                                     s/Cameron McGowan Currie
                                                     CAMERON MCGOWAN CURRIE
                                                     Senior United States District Judge

Columbia, South Carolina
September 5, 2019